ALTORIA AVINGTON AND
CHRISTOPHER WILLIAMS by his
Guardian Ad Litem Erica
Avington

    Plaintiffs,

        vs.

GREYHOUND LINES, INC.,

    Defendant.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Civil Action No.: 05-5343 (JAP)

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION *IN LIMINE* TO BAR/STRIKE PORTIONS OF THE VIDEOTAPED
TRIAL DEPOSITION TRANSCRIPTS OF PEGGY DUENAS, JOSEPH DUENAS,
DONALD GEORGE, LAAMY N. TIADJERI, JASON KING AND TOM SAVARD**

**ORAL ARGUMENT REQUESTED**

**MOTION RETURNABLE THURSDAY, MARCH 27, 2008**

**TOBIN, REITMAN, GREENSTEIN,
CARUSO, WIENER & KONRAY**
A Professional Corporation
1743 St. Georges Avenue
Rahway, New Jersey 07065
(732)388-5454

**Of Counsel and On the Brief
Steven J. Greenstein, Esq. (4968)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . 1

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . 1

LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . 1

    POINT I. . . . . . . . . . . . . . . . . . . . . . . . . 1
    PLAINTIFFS' OPPOSITION TO DEFENDANT'S OBJECTIONS
    TO THE NOVEMBER 17, 2006 DEPOSITION OF PEGGY DUENAS

    POINT II . . . . . . . . . . . . . . . . . . . . . . . . 11
    PLAINTIFFS' OPPOSITION TO DEFENDANT'S OBJECTIONS
    TO THE NOVEMBER 17, 2006 DEPOSITION OF JOSEPH DUENAS

    POINT III. . . . . . . . . . . . . . . . . . . . . . . . 15
    PLAINTIFFS' OPPOSITION TO DEFENDANT'S OBJECTIONS
    TO THE JULY 17, 2006 DEPOSITION OF DONALD GEORGE

    POINT IV . . . . . . . . . . . . . . . . . . . . . . . . 20
    PLAINTIFFS' OPPOSITION TO DEFENDANT'S OBJECTIONS
    TO THE JULY 18, 2006 DEPOSITION OF LAAMY N. TIADJERI

    POINT V. . . . . . . . . . . . . . . . . . . . . . . . . 23
    PLAINTIFFS' OPPOSITION TO DEFENDANT'S OBJECTIONS
    TO THE APRIL 17, 2006 DEPOSITION OF JASON KING

    POINT VI . . . . . . . . . . . . . . . . . . . . . . . . 27
    PLAINTIFFS' OPPOSITION TO DEFENDANT'S OBJECTIONS
    TO THE APRIL 17, 2006 DEPOSITION OF TOM SAVARD

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . 30

## TABLE OF AUTHORITIES

### CASES

Cacciarelli v. Boniface
        325 N.J.Super. 133 (Ch.D. 1999) . . . . . . . . . . . . . 2

DeBiasio v. Illinois Cent. R.R.
        52 F.3d 678 (7th Cir. 1995)   . . . . . . . . . . . . . . 2

Hickman v. Taylor
        329 U.S. 495, 67 S.Ct. 385 (1947) . . . . . . . . . . . 2

Tarnoff v. Wellington Financial Corp.
        696 F.Supp. 151 (E.D.Pa. 1988)  . . . . . . . . . . . . 3

State v. Morrison
        203 Ariz. 489, 56 P.3d 63 (Court of Appeals 2003) . . . . 3

### FEDERAL RULES OF EVIDENCE

402     . . . . . . . . . . . . . . 4,5,6,7,8,9,12,13,14,15,23,24,26

403 . . . . . . . . . . . . . . . . . . . . . 4,8,9,10,11,13,16,17,18

602    . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

607    . . . . . . . . . . . . . . . . . . . . . . . 4,6,7,9,12,14

611(c)   . . . . . . . . . . . . . . . . . . . . . . . . . 20,22

611(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

612 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

613   . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,20

613(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

613(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

701    . . . . . . . . . . . . . . . . . . . . . 16,17,20,26,29

801. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

801(c)   . . . . . . . . . . . . . . . . . . . . . . . . 27,28,29

801(d)(2)(c). . . . . . . . . . . . . . . . . . . . . . 16,24,25,28

801(d)(2)(d). . . . . . . . . . . . . . . . . . . . . . 16,24,26,28

803(1) . . . . . . . . . . . . . . . . . . . . . . . . . 25,28,29

803(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

807 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1001(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## FEDERAL RULES OF CIVIL PROCEDURE

26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

26(5)(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . 2

## STATEMENT OF FACTS

Plaintiffs hereby incorporate by reference their L.Civ.R. 56.1 Statement of Material Facts filed together with its *in limine* Motions on February 29, 2008.

## PRELIMINARY STATEMENT

Regarding the November 17, 2006 depositions of Peggy Duenas and Joseph Duenas, the July 17, 2006 deposition of Donald George, the July 18, 2006 deposition of Laamy N. Tiadjeri, and the April 17, 2006 depositions of Officers Jason King and Tom Savard, Plaintiff hereby incorporates by reference its Preliminary Statement with respect to each of those deponents set forth in its Brief in support of Plaintiff's *in limine* Motions to redact portions of Defendant's cross-examination.

Unless otherwise indicated, the numerical itemization contained in Defendant's March 12, 2008 Motion *in limine* to bar/strike portions of the videotaped trial deposition transcripts regarding Defendant's objections is repeated herein.

## LEGAL ARGUMENT

### POINT I
### PLAINTIFFS' OPPOSITION TO DEFENDANT'S OBJECTIONS TO THE NOVEMBER 17, 2006 DEPOSITION OF PEGGY DUENAS

1. T24:16-T28:6, this line of questioning pertains to the refreshing/impeachment of fact witness Peggy Duenas on cross-examination. The witness authenticated her own voice in an audio taped recording made on August 31, 2006. The deponent is a non-party witness and the witness' statement was not discoverable and only became discoverable when utilized to refresh the witness' recollection and/or impeach the witness at deposition. The tape

1

recording was made on August 31, 2006. Under Fed.R.Civ.P. 26(5)(b)(3), trial preparation/work product materials are only subject to pretrial disclosure under narrow circumstances. Evidence that is to be offered solely for impeachment need not be disclosed. See, DeBiasio v. Illinois Cent. R.R., 52 F.3d 678 (7th Cir. 1995)(Court erred in excluding testimony that was not disclosed since it was offered for impeachment only). Additionally, Fed.R.Civ.P. 26 provides work product privilege protection, Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385 (1947). The tape was utilized at the witness' deposition and the work product issue is now moot. Accordingly, the tape was properly used as indicated infra to refresh the witness' recollection and/or to impeach the witness.

It is Plaintiff's position as the audio tape was a recording made with the consent of at least one party to the conversation, Plaintiff's counsel, there is no prohibition against using the audio tape and there is no issue regarding electronic surveillance.

Unlike Arizona, New Jersey has no ethics opinion which prohibits an attorney who is a party to a conversation from making a recording. New Jersey law is quite clear that a party can audiotape a conversation which he or she is a party to without being in violation of New Jersey law. Cacciarelli v. Boniface, 325 N.J.Super. 133 (Ch.D. 1999), Federal wire tapping law known as Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C.A. 2510-2520, 1982 and Supp. IV 1986) has almost identical language to the New Jersey Wire

Tapping and Electronic Surveillance Act and the New Jersey law is modeled after the Federal law. Id. at 37. Under the Federal Statute, a tape recording of a telephone conversation by one party without the consent of the other is lawful under Federal Law. Tarnoff v. Wellington Financial Corp., 696 F.Supp. 151, 153 (E.D.Pa. 1988) at FN3. Moreover, even under Arizona law there is no prohibition on the use of the recording so long as the recording is made by a party to the conversation or by a party's guardian. State v. Morrison, 203 Ariz. 489, 56 P.3d 63 (Court of Appeals 2003). This case is not controlled by an Arizona attorneys ethics opinion but rather by the Fed.R.Evid. Accordingly, as Plaintiff's counsel was a party to the recorded conversation, the recording was properly utilized at the witness' deposition to refresh the witness' recollection and/or impeach the witness as indicated infra.

On direct examination the witness recounted what transpired with an alleged vivid recollection but on the audio tape indicated: "I was so tired by the time we – she got on the bus and then by the time her and the driver got in the argument. I could have cared less if he – what was going on. I just wanted to go home." (T27:5-24)(Emphasis added). The witness acknowledged that the statement on the tape was correct. (T28:3-6). The tape was also utilized to refresh the witness' recollection as she recalled speaking with Plaintiff's counsel regarding the incident and could not remember her statement to counsel during the conversation that she was tired by the time she got on the bus and by the time her and the driver got into an argument that she

3

could have cared less what was going on and just wanted to go home (T24:16-T25:9). Fed.R.Evid. 607 (impeachment), Fed.R.Evid. 613 (prior statement of witness), Fed.R.Evid. 612 (refresh memory), Fed.R.Evid. 1001(1) (pleadings and recordings).

2.   T30:11-T32:7, in conclusionary language, Defendant indicates that this passage is irrelevant, Fed.R.Evid. 402, and excludable pursuant to Fed.R.Evid. 403 without explanation.   This line of questioning pertains to the physical condition of the witness shortly before the bus ride as she underwent a toe amputation and was taking 100 mg. three times per day of Darvocet N., a pain killer.   The witness' physical condition and the fact that she was taking a pain killer is relevant to the witness' ability to perceive the events transpiring in her presence in light of her then existing state of mind, sensory perception, physical body condition and her ability to store in her memory and accurately recall the facts remembered or believed.   The deponent's credibility is sharply in issue, especially since she outright contradicts the bus driver regarding the "noisy" child scenario with the driver indicating that the child slept through the entire event. Pursuant to Fed.R.Evid. 611(d), the scope of cross-examination not only covers matters referenced on direct but also matters affecting the credibility of the witness.   This line of questioning goes directly to the witness' credibility which is highly relevant under Fed.R.Evid. 402 and there is no basis for exclusion under Fed.R.Evid. 403 and Defendant has identified none other than citing Fed.R.Evid. 403 in conclusionary fashion.

3.    T34:17-T35:2, Plaintiff's counsel is focusing the witness on cross on a highly relevant admission - two other young children on the bus this is relevant to the issue of other potential noise sources.  Fed.R.Evid. 402.

4.    T40:9-12, there is nothing improper.  Plaintiff's counsel was simply inquiring if there were any Hispanic men on the bus. This line related to the testimony of Donald George regarding an incident that occurred onboard the bus when the driver threw trip tickets at a racially mixed Hispanic/Caucasian couple.

5.    T45:7-14, on cross-examination Plaintiff is simply testing the witness' recollection of what transpired onboard the bus. There is no dispute that the driver has testified that the child slept through the entire incident!  Yet this witness denies that the child woke up when the police boarded the bus.  Fed.R.Evid. 402.

6.    T46:16-20, the witness initially claimed that she filled out some type of a report regarding the incident and handed it into Greyhound.  Mr. Duenas at his deposition indicated that he was the one that completed the report.  Parenthetically, the report has never been produced in discovery.  Plaintiff was probing the witness' recollection after asking a leading question on cross to the effect that her husband indicated that she completed the report, the witness agreed that he did and she did not.  This testimony effects the witness' recollection of the event and goes

5

to her credibility. Fed.R.Evid. 402 and 607.

7.    T46:21-24, see #6, which is incorporated by reference.

8.    T49:19-21, the witness acknowledged at T49:16-18 that there may have been other children on the bus who were making noise as well.  The witness made no complaint about these children (T49:9-20) as a certain level of noise was to be expected from children (T49:22-T50:2).  The witness' credibility is in issue because she ultimately claimed that her husband submitted an incident report which has never been produced in discovery.  Yet, no complaint was made that other children on the bus were making noise, the line goes to impeachment of the witness' credibility. Fed.R.Evid. 607.

9.    T56:13-18, the witness' bus ticket supplied in discovery listed the final destination of Amarillo, Texas.  The witness indicates her point of embarkation was in Iowa with a final destination in Yuma, Arizona (T56:1-13).  The deponent was first contacted as a potential witness by Greyhound in 2006.  The ticket supplied in discovery claimed that the deponent was allegedly on the bus.  The witness denies that the ticket produced in discovery bearing her name was her bus ticket.  There is a ticket with a final destination in Amarillo, Texas which bears her name but there is no address for her on the ticket. There is nothing in this case which contains any address which would have allowed Greyhound to locate the Duenases, *especially*

6

since she claims the ticket was purchased for her in cash by her
son-in-law.   A credibility question exists has to whether this
deponent and her husband were even on board the bus since there
version concerning the noisy child is flatly contradicted by the
driver himself.   This cross-examination of the deponent (T56:1-
T60:8) is highly relevant under Fed.R.Evid. 402 and the
impeachment is proper under Fed.R.Evid. 607.

10.   T57:21-T58:4, see #9, which is incorporated by reference.

11.   T59:17-21, the witness' credibility is an issue.   The
witness denies that although contacted twice by Greyhound
representatives, there was no discussion regarding the underlying
incident on either occasion.

12.   T60:3-10, again, there is an issue as to whether this
particular witness was the Peggy Duenas who was actually onboard
the bus at the time.   There is a problem with the deponent's
ticket and the written statement which she claims her husband
allegedly turned into Greyhound has never been produced.   The
witness indicates that she has no idea the bus or route number of
the bus that she claims she was on and whether the schedule for
route #1333 although she was on that route (T60:11-19).

13.   T60:24-T61:12, there is an identification issue.   The
witness believes that the black grandmother in the case was 5'4"
or 5'5".   Plaintiff's counsel inquired as to whether the deponent

had indicated to counsel that she was 5'2" and the person who had the incident with the driver was two or three inches taller which would make that person 5'4"-5'5". The witness also acknowledged that she wasn't sure if her recollection would be more accurate in 2006 or at the time her deposition was taken. This line is relevant to the witness' credibility (T60:20-T61:12).

14. T62:6-T63:1, on direct the deponent claimed at the time she was a bus passenger she was recovering from surgery. Plaintiff's counsel was exploring the witness' ability to be a percipient witness because she was in pain from a toe amputation and was being medicated. Her physical condition is relevant to her ability to be a percipient witness, her ability to recall properly, her propensity to exaggerate about what transpired because of her frame of mind – she was not feeling well. Fed.R.Evid. 402.

15. T64:16-20, this goes to the witness' credibility and mood with respect to the way that she characterizes noise emanating from a child onboard the bus. This witness' tolerance for activity around her when in pain is relevant to her credibility (T64:14-T65:17).

16. T65:18-24, there is nothing objectionable in exploring whether the witness heard the police when they boarded the bus. Fed.R.Evid. 403.

17.  T66:11-17, this is cross-examination.  The witness had previously suggested on direct that the police told the Plaintiff to move her seat but now acknowledges that she was not so told and agrees that she wasn't told to get off the bus when the police boarded (T66:8-17).  Fed.R.Evid. 402 and 607.

18.  T66:22-25, this is relevant and admissible under Fed.R.Evid. 402 and counsel is exploring how the event unfolded once the police boarded the bus.

19.  T73:8-14, Fed.R.Evid. 402.  The witness acknowledges that Mrs. Avington did not do anything onboard the bus to cause the incident between her and the driver to unfold.

20.  T78:4-7, Fed.R.Evid. 402.  This line is relevant with respect to whether the witness was or was not in pain during the event which she claims to have perceived and the accuracy of her recollection of the events.

21.  T79:23-T80:2, Plaintiff's counsel was testing the witness' recollection concerning where the complaint form was to be turned in.  Fed.R.Evid. 403.

22.  T80:8-12, Plaintiff's counsel was seeking clarification as to who completed (if it was completed) the never produced witness complaint form.  This is relevant under Fed.R.Evid. 403.

23. T81:17-22, the deponent claims that she handed in a witness complaint form to Greyhound. This form has been requested and never produced in discovery. The witness' credibility is in issue concerning whether she perceived the events onboard the bus in the manner in which she describes them and in fact ever made any complaint. (The form is also referred to as a loading list, although the witness does not know that).

24. T94:16-22, this goes to the issue of whether this witness was onboard the bus at the time of the event between the Plaintiff and the driver based upon her ticketed destination vis-a-vi the ticket which was allegedly furnished in discovery. Fed.R.Evid. 403.

25. T95:12-15, see Plaintiff's argument with respect to #24 which is incorporated by reference.

26. T95:16-T96:5, this goes to the witness' recollection as to what transpired onboard the bus and whether she was a percipient witness who had a good recollection, her credibility is in issue. Fed.R.Evid. 403.

27. T96:6-11, this goes to the witness' recollection as to what transpired as there will be other proofs in this case regarding the Plaintiff's seating. Fed.R.Evid. 403.

10

28.  T96:16-21, see Plaintiff's position regarding #27 which is incorporated by reference.

29.  T97:1-8, relevant under Fed.R.Evid. 403 as it goes to seating onboard a Greyhound bus.

30.  T97:9-15, relevant under Fed.R.Evid. 403 with respect to seating arrangements onboard a Greyhound bus.

31.  T97:18-21, Fed.R.Evid. 403, relevant as to where she observed the Plaintiff was seated in relationship to her position.

32.  T98:8-13, relevant to the deponent's identification of the driver, who was never identified by name.  Her erroneous recollection is that the same driver (who would be Richardson) was on the bus from Iowa up to the point the incident occurred – this is incorrect and flatly contradicted by the driver in his deposition testimony.  This line is relevant under Fed.R.Evid. 403 and goes to the witness' credibility concerning her recollection of the incident.

**POINT II**
**PLAINTIFFS' OPPOSITION TO DEFENDANT'S OBJECTIONS**
**TO THE NOVEMBER 17, 2006 DEPOSITION OF JOSEPH DUENAS**

1.  T27:15-20, the deponent is impeached when he agrees to advising counsel the incident happened a long time ago and that he did not really remember the incident because he was not paying

11

that much attention and was not concerned.  The witness' lack of
personal knowledge and failure of recollection is relevant under
Fed.R.Evid. 402, 602 and by way of impeachment, Fed.R.Evid. 607,
it is highly relevant regarding a jury's assessment of his
credibility and the accuracy of the facts which he testifies
regarding.

2.    T33:4-8, the witness did not complain to the driver that the
child was making too much noise (T32:21-24).  Because kids tend
to be kids, the witness was able to focus his mind away from
child related noise.  As previously indicated, the driver agrees
that the child was not making any noise and slept through the
entire incident.    This testimony is highly relevant under
Fed.R.Evid. 402 in demonstrating that there was no emergent event
in progress which justifies the driver's advisement to the
Plaintiff to move to the back of the bus.

3.    T33:24-T34:4, the deponent was seated next to his wife on
the bus.  The position of her Plaintiff and her grandson visa via
Mr. and Mrs. Duenas is relevant with respect to their ability to
make observations and undermine the witness' conclusion that the
noise emanated from the grandson.  Accordingly, the position that
Mrs. Duenas would have to maneuver herself into in order to be in
a position to even see the Plaintiff and her grandson is
relevant. Fed.R.Evid. 402.

4.   T38:10-13, whether the witness had any verbal communication with the grandson is relevant.   Fed.R.Evid. 403.

5.   T38:14-18, because of the admitted change in drivers (see Richardson's deposition), Plaintiff's counsel was exploring the witness' recollection of what transpired which led to the admission by the witness that he was not paying that much attention.   The level of attention the witness paid to the event is relevant to an assessment of the witness' credibility and whether he is accurate in his description of what occurred onboard the bus. Fed.R.Evid. 402.

6.   T41:22-T42:5, the presence of other children on the bus is relevant to the issue of noise and why the Plaintiff was singled out to change seats.   Fed.R.Evid. 402.

7.   T42:19-23, the age of the other two children is relevant under Fed.R.Evid. 402 to the noise issue which Defendant has raised.

8.   T43:25-T44:5, Plaintiff's counsel is exploring the potential bias of the witness in light of the fact the driver accommodated Mrs. Duenas who was recuperating from foot surgery and permitted her to sit in the front passenger seat on the bus.   Fed.R.Evid. 402.   The witness has a reason to give testimony helpful to the defense.

9.   T44:6-9, Plaintiff incorporates by reference its arguments to objection #8.

10.   T44:10-17, Plaintiff incorporates by reference its arguments to objection #8.

11.   T45:3-8, the testimony is relevant under Fed.R.Evid. 402 to show that it was only the Plaintiffs who were told by the driver where they should sit on the bus even though Greyhound has an open seating policy according to the driver.

12.   T45:16-21, the testimony is relevant to test the witness' recollection of the events that he purports to testify to. Fed.R.Evid. 402.

13.   T47:7-12, the testimony is relevant to explore the time period the witness was a passenger on the bus between the point he initially got on the bus and where the incident occurred. Fed.R.Evid. 402.

14.   T53:6-14, the testimony is relevant to the deponent's recollection of the incident and evaluation of his credibility. Fed.R.Evid. 402 and 607.

15.   T53:15-22, the testimony is relevant under Fed.R.Evid. 402. The witness' version is inconsistent with the driver's, that the driver advised the Plaintiff that "you are distracting the

driver" (T53:15-T54:8).

16.  T53:23-T54:8,   see   Plaintiff's   response   to   Defendant's
objection #15.

17.  T61:18-25, this testimony is relevant to whether Mr. Duenas
was a passenger on the bus.   Fed.R.Evid.  402.

18.  T62:1-7, Plaintiff incorporates its argument in response to
Defendant's objection #17.

**POINT III**
**PLAINTIFFS' OPPOSITION TO DEFENDANT'S OBJECTIONS**
**TO THE JULY 17, 2006 DEPOSITION OF DONALD GEORGE**

1.  T22:9-20, this passage pertains to the time frame when the
driver told the Plaintiff to move to the back of the bus (T20:24-
T23:12).   Why, how and in what manner the driver told the
Plaintiff  to  move  is  highly  relevant  to  his  intent  to
discriminate and the psychological impact the incident had on the
Plaintiff.   Fed.R.Evid.  402.   Since it is undisputed that the
driver did not use a direct racially derogatory remark, Plaintiff
needs to prove the driver's intention by circumstantial evidence.
The  witness  is  recounting  what  the  driver's  tone  of  voice,
behavior and expression were - what he was communicating.   The
witness indicates that the message was quite clear being that the
Plaintiff was going to have to sit where he wanted her to sit and
she  was  not  going  to  pick  her  seat.    The  witness  may  give
testimony in the form of opinions or inferences where they are

15

(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue. Fed.R.Evid. 701. All of those criteria are met.

2.   T28:11-25, this portion of the testimony relates to the time period that the driver got off the bus and was speaking with the police who were investigating the incident.  During this time period a Hispanic passenger approached the police and driver because the delay was holding up the bus leaving.  The driver told the passenger to shut up and get back on the bus.  The driver's demeanor during the entire incident including this encounter with the police is highly relevant to the issue of whether the driver is a racist and intended to discriminate.  The passenger's statement is not introduced under Fed.R.Evid. 801 for the purpose of demonstrating the truth of the matter asserted – that there was a delay of the bus departing (although this is not really disputed in the case) but rather to provide context to the statement made by the driver and is admissible through Mr. George who witnessed the incident under Fed.R.Evid. 801(d)(2)(c) and (d) because the driver was authorized to make statements concerning the subject matter and it was an agent or servant of Defendant Greyhound and concerns a matter within the scope of his agency and/or employment made during the existence of the relationship while interacting with bus passengers.  The statement is relevant under Fed.R.Evid. 403.   The statement also corroborates deposition testimony of the police who investigated the incident

16

and described the bus driver's demeanor.

3.   T34:8-16, the Defendant is objecting to a portion of the witness' answer.   The question appears at T33:25, the witness' answer begins at T34:4-7 and continues to lines 8-16.   To put the matter in context, Plaintiff's contention is that the driver was acting erratically throughout the entire incident because he is a racist.   The driver haphazardly pulled the bus over on the Interstate (T34:7-T35:2).   The defense contends that noise furnished the justification for the driver's conduct when he refused to permit the Plaintiffs to sit in the front of the bus.   Instead of handing out the passenger complaint cards when the bus was stationary at a bus station, the driver pulled the bus over on (not off) the Interstate.   The testimony is relevant to show the driver's erratic conduct.   This is also proper opinion testimony under Fed.R.Evid. 701 because the witness' opinion was rationally based upon perception and helpful to a clear understanding of the witness' testimony and a determination of a fact in issue.

4.   T36:3-8, to put the matter in context, the witness is explaining why he did not fill out the card or witness incident statement.

5.   T36:12-21, the testimony is relevant under Fed.R.Evid. 403 to explain why the witness did not make a written complaint about the driver because the complaint would have had to go through the

driver initially.

6.   T37:8-22, initially, the segment at T37:13-18 is not hearsay because it references a statement made by a party (Plaintiff) and the Plaintiff may testify at trial and is subject to cross-examination concerning this statement.   The statement will be consistent with the Plaintiff's testimony and is offered to rebut any express or implied charge that Plaintiff has fabricated the description of the incident or has an improper motive.   The second portion of the response, T37:19-22 is offered to explain how Donald George ended up as a witness because persons were giving their identification information to the Plaintiff. Further, there is no dispute in this case that the bus ran late due to the delay in Springfield, Missouri.

7.   T38:8-17, this passage relates to why Donald George did not fill out a complaint form and turn it in to the driver.   It demonstrates the mental process which the witness went through in making the decision not to hand in a complaint form.   Even if he did, it is unlikely that such a form would find its way to Greyhound since it had to go through the driver; the testimony is relevant under Fed.R.Evid. 403 as it explains the witness' reasoning and conduct.

8.   T46:14-17, to put the matter in context, on cross-examination, the defense asked the question "but you had stated before that you were not going to - you were not going to say

18

that he was discriminating against the Plaintiff and you were not
going to say that he was not?" A. "In other words, I am not going
- - when I quoted that, what I was saying is I was going to say
he was and I wasn't going to say he wasn't; and the meaning of
that is you have to be there to make that call your own self." Q.
"When you say you were not going to say he was and you were not
going say he wasn't, you are saying that you were not going to
say that he was discriminating against her and you were not going
to say he wasn't." A. "Yeah, at the time." (T44:1-18).

The foregoing passage (T44:8-21) is the subject of an *in limine*
objection made by Plaintiff.  In the event that objection is
overruled, this line of questioning was opened up by the defense
and at T46:14-T47:5, Plaintiff is entitled to explore the area as
to whether the driver was acting in a racist manner towards the
Plaintiff and the basis for the witness' conclusion.  When and if
the Court sustains Plaintiff's objection, this question is
different than the one posed by the defense as to whether the
driver was discriminating against the Plaintiff (an ultimate
issue to be determined by the jury) but here the issue is
whether the driver conducted himself in a racist manner toward
the Plaintiff.

9.   T47:18-23, Plaintiff does not understand Defendant's
objection.  The transcript simply indicates in these lines that
Plaintiff's counsel advised the witness that the examination was
concluded and the parties went off the record.

10.   T47:3-6, as soon as the parties went off the record, the witness *sua sponte* brought to all counsel's attention that he had not finished the answer that appears at T47:16-18.   Once again, the testimony is proper lay opinion under Fed.R.Evid. 701.

**POINT IV**
**PLAINTIFFS' OPPOSITION TO DEFENDANT'S OBJECTIONS**
**TO THE JULY 18, 2006 DEPOSITION OF LAAMY N. TIADJERI**

1.   T39:12-19, for the Court's information, the discovery and oral deposition of this deponent was taken on July 18, 2006 in Minneapolis, Minnesota.   Unfortunately, a printout out of the discovery deposition was not available before the videotaped deposition commenced.   T39:12-19 represents nothing more than Plaintiff's counsel's refreshing the recollection of the deponent of the name of an individual on board the bus whom the deponent identified in her discovery deposition as Rebecca Ojo.   The identification of the alleged offending bus passenger is significant.   Additionally, the accuracy of the deponent's recollection of the incident onboard the bus and her credibility are in issue.

This occurred on cross-examination by Plaintiff of a fact witness.   Leading questions are permissible on cross-examination especially when a party calls a witness identified with an adverse party. Fed.R.Evid. 611(c).   Under Fed.R.Evid. 613 in examining a witness concerning a prior statement made by the witness, the statement need not be shown to the witness and Fed.R.Evid.   613(a)(the witness' discovery deposition is a

statement) and the witness was afforded an opportunity to explain or deny same and Defendant questioned the witness at the deposition.   Fed.R.Evid. 613(b).   In fact, the witness' response was: "I think so, yes." (T39:24-T40:3).

2.   T39:24-T40:4, this is a continuation of defendant's objection #1 and Plaintiff hereby incorporates by reference its opposition as T39:12-19 must be read in context with T39:24-T40:4.

3.   T49:9-15, there is no basis for Defendant's objection. Plaintiff hereby incorporates by reference its citation to various Evidence Rules in objection #1, which are equally applicable.   The witness does not have to agree with a leading question put on cross-examination by Plaintiff's counsel and did not.   Here, there is no basis for redaction.

4.   T54:12-17, there is absolutely no basis for Defendant's redaction of T54:12-17.   Preliminarily, the witness had indicated that there was an altercation between the bus driver and Plaintiff.    It is completely proper to establish that the altercation was verbal, not physical and the Plaintiff in no way threatened that she was going to shoot or stab the bus driver. The police officers who responded to the scene indicated in their depositions that after they advised the driver Plaintiff would not be ejected that the driver advised them that he was concerned that the Plaintiff was going to shoot or stab him.   Defendant's

own fact witness corroborates the police officer testimony and taken in conjunction with that of the bus driver and police officers demonstrates that the driver is a liar. It is completely permissible to ask leading questions on cross-examination. Fed.R.Evid. 611(c).

5.   T58:25-T59:7, there is no basis for Defendant's objection. Plaintiff's counsel attempted to refresh the witness' recollection regarding which specific seat the Plaintiff and her grandson were seated in when the bus left Springfield, Missouri. The witness indicated that they were toward the front of the bus but she couldn't recall what seat she was in (T58:18-24). Counsel attempted refreshing the recollection of the witness by a leading question on cross-examination resulted in the witness continuing to say that she could not recollect that they were seated in either the third or fourth row toward the front of the bus or on the passenger side at the time the bus left out of Springfield (T58:25-T59:7). The witness' memory and recollection of the event is relevant. The examination is proper. Fed.R.Evid. 611(c) indicating that leading questions should be permitted on cross-examination.

6.   T60:24-T61:3, the background for this section is an exploration of the witness' potential bias and also if there was any disturbance or other justification for the driver's attempted ejection of the Plaintiffs from the bus. Here, deponent indicates that it was not her desire that the Plaintiffs be

ejected (T60:20-T61:2). Plaintiff is entitled to demonstrate on cross-examination that nothing occurred which made the Plaintiffs undesirable bus passengers who should be ejected. The testimony is relevant under Fed.R.Evid. 402 to the issues in this case.

### POINT V
### PLAINTIFFS' OPPOSITION TO DEFENDANT'S OBJECTIONS
### TO THE APRIL 17, 2006 DEPOSITION OF JASON KING

1. T17:25-T18:11, Defendant's objection is baseless. At T17:11-24, the deponent indicated that the bus driver advised that there was no supervisor at the location (Springfield Terminal) to respond to the incident. Plaintiff's counsel then asked a general question as to what transpired after it was apparent that there was no supervisor who responded, which led to the line at T18:17-T19:3, indicating that the bus driver advised a Hispanic male passenger who approached the driver and the police to "shut up" (T18:17-T19:3). The Plaintiff's proofs developed in discovery demonstrate that another incident onboard the same bus occurred when Mr. Richardson, threw bus tickets at a racially mixed couple consisting of a Hispanic male and Caucasian female. The driver is Caucasian. The driver's behavior towards non-Caucasians, in this instance a racial mixed couple, is further circumstantial proof that the driver intended to discriminate against the Plaintiffs.

The Defendant's objection is limited to the fragment at T17:25-T18:11. In that fragment, the witness indicated that when the driver advised that there was no supervisor, Officer Savard

23

responded (T17:25-T18:3).  Accordingly, there is nothing improper in the objected to passage.  It is relevant.  Fed.R.Evid. 402.

2.  T18:16-T19:14, see Plaintiff's response to objection #1 which is incorporated by reference.  The driver's interaction with the Hispanic male passenger advising him to "shut up and get back on the bus" is highly relevant to the driver's demeanor and how the driver interacted with passengers and is relevant on the issue of whether the driver intended to discriminate against the Plaintiffs as well as what the driver's general frame of mind was at the time and place. Fed.R.Evid. 402.  The police officer's testimony recounting what the bus driver said to the passenger is not hearsay because the statement of the driver is an admission by a party opponent under Fed.R.Evid. 801(d)(2)(c) and (d) in that the driver was authorized to make statements concerning the subject and the driver is Greyhound's agent or servant and the driver made a statement concerning a matter within the scope of the agency and/or employment during the existence of the relationship – since the driver is permitted to interact with bus passengers.

3.  T23:9-19, the Plaintiff advised this police officer that she had not done anything wrong and was not getting off the bus (T22:20-24).  In the police officer's presence, other passengers on the bus advised that the Plaintiff had not done anything wrong and was not causing a problem and it was the bus driver that was causing the problem.  No bus passengers approached the police and

24

advised them that the Plaintiff had done anything wrong (T23:20-
T24:21).   Under Fed.R.Evid. 803(1), present sense impression, a
statement describing or explaining an event or condition made
while the declarant was perceiving the event or condition or
immediately thereafter is admissible whether the declarant is
available or not.  Here, the police officer is testifying to what
passengers of the subject bus advised him (T23:9-13).   The
passengers were describing and explaining the event or condition
that occurred on the bus and the description or explanation by
the bus passengers was based upon perception and was made
immediately thereafter satisfying the trustworthiness guarantee.
 Alternatively, Plaintiff submits that the statement also fits
within the outfits of Fed.R.Evid. 807 residual exception.

4.   T25:1-18, there is no hearsay issue as the objected to
passage references statements made by the bus driver to the
investigating  police  officer  together  with  the  witness'
perception that he was referring to the Plaintiff.  Additionally,
the driver indicated that he was afraid that he was going to be
stabbed by the black female (who is the Plaintiff).   Initially,
this passage is not hearsay because it references statements made
by parties.   In the case of the bus driver, the statement is
offered against Defendant Greyhound and was made by the driver
who was authorized to make statements concerning the subject
matter.   Fed.R.Evid. 801(d)(2)(c).  Also, a statement made by a
party's agent or servant concerning a matter within the scope of
the agency of employment made during the existence of the

25

relationship is not considered hearsay as it is an admission by a party opponent. <u>Fed.R.Evid.</u> 801(d)(2)(d).  See also Plaintiff's response to objection #2, p. 19.  This testimony is relevant under <u>Fed.R.Evid.</u> 402.

5.  T26:23-T28:2, the police officer is testifying as to the results of his investigation and the demeanor of the driver.  The witness describes the driver as irate and out of control of the bus (T27:4-5).  The bus driver's demeanor and state of mind are relevant as to whether he intended to discriminate against the Plaintiff.  It is also relevant to the driver's credibility as he does not subscribe to the view that he was irate.  The testimony is relevant under <u>Fed.R.Evid.</u> 402.  The testimony is also admissible under <u>Fed.R.Evid.</u> 701, opinion testimony by lay witness, since the police officer's testimony is limited to those opinions or inference which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

6.  T38:4-7, no objection to this passage was made at the deposition. The nature of the call which was under investigation (even though the initial dispatch was to Savard's partner, King) "child was making noise on the bus and causing a disturbance" is a relevant preliminary question for the witness' subsequent testimony that he did not hear any child on the bus making noise and no passenger on the bus advised him that the child was making

noise or causing a disturbance. As the Court is well aware, the driver's initial justification for trying to eject the Plaintiffs was noise causing a disturbance (although the driver later admitted at his deposition that the child slept through the entire incident and was not causing a disturbance). The question and testimony is necessary in order to place the officer's response at T38:15-21 in context as to the nature of the call that prompted the police to respond to the scene and investigate. The statement that the child was making noise is not offered for the truth Fed.R.Evid. 801(c). In fact, Plaintiff contends the child slept through the entire incident.

## POINT VI
### PLAINTIFFS' OPPOSITION TO DEFENDANT'S OBJECTIONS TO THE APRIL 17, 2006 DEPOSITION OF TOM SAVARD

1.   T14:13-T15:7, this passage pertains to similar testimony given by police officer Jason King. Plaintiff's opposition to Defendant's redaction motion regarding similar testimony from Officer King is hereby incorporated by reference (see pp. 19-20). The fact that another bus passenger got off the bus and approached the driver and the police and advised that the Plaintiff was not causing any problem to which the driver appeared angry and advised the passenger to "shut up" is highly relevant to the issues in this case involving the driver's demeanor and credibility and is circumstantial proof of whether the driver intended to discriminate.

Initially, the statement made by the unidentified bus passenger qualifies as a Fed.R.Evid. 803(1), present sense impression, as it describes or explains an event or condition immediately after the event or condition was perceived by the passenger.

It also qualifies as a Fed.R.Evid. 803(2) excited utterance as the calling of the police to scene by the driver was certainly a startling event or condition and the declarant is clearly under the stress of excitement caused by the event or condition.

Alternatively, Plaintiff submits that the passenger's statement is not being offered for the truth of the assertion and is not hearsay under Fed.R.Evid. 801(c) but is necessary for the jury to understand what precipitated the driver's advisement to the bus passenger to "shut up". The driver's statement is not hearsay because it qualifies under Fed.R.Evid. 801(d)(2)(c) and (d) as an admission by a party opponent because the driver was authorized to make statements concerning the subject and he was an agent/servant and it involves a matter within the scope of his agency or employment made during the existence of that relationship as the driver is authorized to interact with passengers.

2.    T17:13-15, Defendant is seeking redaction of a portion of the witness' answer which begins at T17:2. The police officer is recounting what the Plaintiff advised him, what identified passengers on the bus said and what the driver said in response.

The unidentified passenger's statements qualify under Fed.R.Evid. 803 (1) as present sense impressions and (2) as excited utterances, in the former case, because they describe an event or condition while immediately after perceiving it and in the later case the presence of the police who were called by the driver to the scene is a startling event or condition and was made while the passenger was under the stress of excitement caused by the event or condition.  The testimony also explains why according to the officer "[t]he bus driver backed down and said, 'I will let her ride to Joplin, but if there's any problem, I am going to out her off Joplin.'" (T17:16-18).  Unless the jury understands why the driver "backed down" it would not make any sense as to why the driver who is adamant in ejecting the Plaintiffs acquiesced to allowing them to ride on the bus.

Alternatively, Plaintiff submits that the statements made by the passengers are not being introduced for the truth of the matter asserted and are not hearsay under Fed.R.Evid. 801(c).

3.   T23:3-18, the police officer's testimony is admissible under Fed.R.Evid. 701.   The officer indicates that based upon his investigation it appeared that the driver had some "racial issues".   The police officer explained that the basis of his opinion: the driver advised the Middle Eastern gentleman to shut up after the police officer advised the driver that he was going to out the Plaintiff off the bus, the driver remarked "[t]hat he didn't want to get shot of stabbed" – the driver never made that

statement to the police officer about being shot or stabbed until after the officer advised that he was not going to eject the Plaintiff (T23:9-T24:3).  The fact that the driver "had some racial issues" was rationally based on the perception of the police officer and is helpful to a clear understanding of the witness' testimony as well as a determination of a fact in issue which is critical - whether the driver intended to discriminate against the Plaintiffs.  It is important to note that the officer did not testify on the ultimate issue - whether the driver intended to discriminate which is a different issue.  (See Plaintiff's brief in connection with its Motion to redact portions of the cross-examination of Donald George regarding testimony of "intent to discriminate".  As Plaintiff must prove intent to discriminate in this case based upon circumstantial evidence, the officer's opinion that the driver had some racial issues is proper.

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's Motion to bar/strike portions of the videotaped trial deposition transcripts pf Peggy Duenas, Joseph Duenas, Donald George, Laamy N. Tiadjeri, Jason King and Tom Savard.

Respectfully submitted,

TOBIN REITMAN GREENSTEIN
CARUSO WIENER & KONRAY, P.C.

By: /s/ Steven J. Greenstein
STEVEN J. GREENSTEIN

DATED: March 17, 2008