**TOBIN REITMAN GREENSTEIN**
**CARUSO WIENER & KONRAY**
A Professional Corporation
1743 St. Georges Avenue
Rahway, New Jersey 07065
732-388-5454
Attorneys for Plaintiff(s)
**Our File No: 234414**

ALTORIA AVINGTON AND
CHRISTOPHER WILLIAMS by his
Guardian Ad Litem Erica
Avington

Plaintiffs,

vs.

GREYHOUND LINES, INC.,

Defendant.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Civil Action No.: 05-5343 (JAP)

---

**TRIAL BRIEF**

**POINT V – POINT XIV**

---

TOBIN REITMAN GREENSTEIN
CARUSO WIENER & KONRAY
A Professional Corporation
1743 St. Georges Avenue
Rahway, New Jersey 07065
732-388-5454

**Steven J. Greenstein, Esq. (4968)**
**Of Counsel and On the Brief**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . 2

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . 16

    POINT I . . . . . . . . . . . . . . . . . . . . . . . 16
    GREYHOUND IS LIABLE FOR PUBLIC ACCOMMODATION RACIAL
    DISCRIMINATION UNDER NJLAD, N.J.S.A. 10:5-12(f)(1)

        A.   VICARIOUS LIABILITY . . . . . . . . . . . . 20

        B.   THE EVIDENCE IS SUCH THAT A REASONABLE
            JURY COULD RETURN A VERDICT FOR PLAINTIFFS
            UNDER NJLAD, N.J.S.A. 10:5-12(f)(1)
            and 42 U.S.C. § 1981 . . . . . . . . . . . 27

    POINT II . . . . . . . . . . . . . . . . . . . . . . 33
    VICARIOUS LIABILITY APPLIES TO SUITS
    BASED ON 42 U.S.C. § 1981

    POINT III . . . . . . . . . . . . . . . . . . . . . 35
    GREYHOUND IS LIABLE FOR THE NEGLIGENT RETENTION
    AND/OR SUPERVISION OF THE DRIVER

    POINT IV . . . . . . . . . . . . . . . . . . . . . . 37
    PLAINTIFFS ARE ENTITLED TO RECOVER EMOTIONAL
    DISTRESS DAMAGES UNDER LAD

    POINT V . . . . . . . . . . . . . . . . . . . . . . 41
    PLAINTIFF' INTENTIONAL INFLICTION OF
    EMOTIONAL DISTRESS CLAIM

    POINT VI . . . . . . . . . . . . . . . . . . . . . . 43
    PLAINTIFFS' NEGLIGENT INFLICTION OF
    EMOTIONAL DISTRESS CLAIM

    POINT VII. . . . . . . . . . . . . . . . . . . . . . 45
    THE COURT SHOULD NOT DISMISS PLAINTIFFS'
    PUNITIVE DAMAGE CLAIM

    POINT VIII . . . . . . . . . . . . . . . . . . . . . 47
    RICHARD GRAVES' PERFORMANCE EVALUATIONS OF ALTORIA
    AVINGTON HAVE NO RELEVANCE TO ANY ISSUE IN THIS CASE
    AND ADMISSION IS ALSO OUTWEIGHED BY UNDUE PREJUDICE,
    ISSUE CONFUSION AND MISLEADING THE JURY

POINT IX . . . . . . . . . . . . . . . . . . . . . . . 50
SCOPE OF TESTIMONY OF PLAINTIFFS'
WITNESSES: SLATTERY and HOWELL

POINT X  . . . . . . . . . . . . . . . . . . . . . . . 54
THE COURT WILL NEED TO LIMIT THE
SCOPE OF JOSEPH KAYLOR'S TESTIMONY

POINT XI . . . . . . . . . . . . . . . . . . . . . . . 57
GLENITRA JOHNSON'S TESTIMONY IS RELEVANT
AND ADMISSIBLE UNDER Fed.R.Evid. 402

POINT XII. . . . . . . . . . . . . . . . . . . . . . . 59
ISSUES REGARDING GREYHOUND'S GENERAL MANAGER
BILL BLANKENSHIP ARE MOOT

POINT XIII . . . . . . . . . . . . . . . . . . . . . . 59
ISSUES REGARDING ALEX GUARIENTO ARE MOOT

POINT XIV  . . . . . . . . . . . . . . . . . . . . . . 60
THE SCOPE OF MYRON WATKINS' TESTIMONY

## TABLE OF AUTHORITIES

**CASES**

49 Prospect Street Tenant's Assoc. v. Sheva Gardens, Inc.
    227 N.J.Super. 449 (App. Div. 1988) . . . . . . . . . . . 45

Anderson v. Liberty Lobby, Inc.
    477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . 37

Arguello v. Conoco, Inc.
    207 F.3d 803 (5th Cir. 2000)  . . . . . . . . 23,24,25,27,33

Benton v. Cousins Properties Inc.
    230 F.Supp.2d 1351 (N.D.Ga. 2002) . . . . . . . . . . . . 29

Bobbitt v. Rage, Inc.
    19 F.Supp.2d 512 (W.D.N.C. 1998). . . . . . . . . . . . .29,30

Bolden v. Southeatsren P.A. Transp. Auth.
    21 F.3d 29 (3rd Cir. 1994). . . . . . . . . . . . . . . . 38

Bouton v. BMW of North America Inc.
    29 F.3d 103 (3d Cir. 1994) . . . . . . . . . . . . . . 22,23

Boykin v. Bloomsburg U. of Penn., et al.
    893 F.Supp. 400 (1995) . . . . . . . . . . . . . . . . . .33

Brown v. Philip Morris, Inc.
    250 F.3d 789 (3d Cir. 2001) . . . . . . . . . . . . . . . 28

Buckley v. Trenton Savings Fund Soc'y
    111 N.J. 355 (1988) . . . . . . . . . . . . . . . . . . . 41

Burlington Industries, Inc. v. Ellerth
    524 U.S. 742, 188 S.Ct. 2257 (1998)  . . . . . . . . . 34,35

Callwood v. Dave Buster's Inc.
    98 F.Supp.2d 694 (D.Md. 2000). . . . . . . . . . . . . . 29

Cedeno v. Montclair State Univ.
    163 N.J. 473 (2000) . . . . . . . . . . . . . . . . . . . 19

Clark v. Burger King Corp.
    255 F.Supp.2d 334 (N.D.N.J. 2003) . . . . . . . . . . . . 45

Cohen v. California
    403 U.S. 15, 91 S.Ct. 1780, 1784 (1971) . . . . . . . . . 18

Cosgrove v. Lawrence
    215 N.J.Super. 561 (App. Div. 1987). . . . . . . . . . . .23

Dale v. Boy Scouts of Am. (Dale III)
    308 N.J.Super. 516 (App. Div. 1998) . . . . . . . . . . . 17

Decker v. Princeton Packet, Inc.
    116 N.J. 418 (1989) . . . . . . . . . . . . . . . . . . . 43

DiCosala v. Kay
    91 N.J. 159 (1982)  . . . . . . . . . . . . . . . . 22,35,36

Eddy v. Waffle House, Inc.
    335 F.Supp.2d 693 (D.S.C. 2004). . . . . . . . . . . . . .25

Flanigan v. AE Henry Com. Health Services Ctr.
    876 F.2d 1231 (5th Cir. 1989) . . . . . . . . . . . . . . 35

Franek v. Tomahawk Lake Resort
    333 N.J.Super. 206 (App. Div. 2000). . . . . . . 18,19,27,40

General Building Contractors Assoc., Inc. v. PA
    458 U.S. 375, 102 S.Ct. 3141 (1982)  . . . . . . . . . 33,34

Government Ins. Co. v. U.S.
    678 F.Supp. 454 (D.N.J. 1988) . . . . . . . . . . . . . . 23

Hampton v. Dillard Dept. Stores, Inc.
    247 F.3d 1091 (10th Cir. 2001) . . . . . . . . . . . . 29,30

Jett v. Dallas Independent School District
    491 U.S. 701, 109 S.Ct. 2702 (1989) . . . . . . . . 33,34,35

Johnson v. Railway Exp. Agency, Inc.
    421 U.S. 454, 95 S.Ct. 1716 (1975)  . . . . . . . . . . . 45

Lehman v. Toys R Us, Inc.
    132 N.J. 587 (1993)  . . . . . . . . . . . . . . . . . 18,23

McAllister v. Greyhound Lines, Inc.
    197 WL 642994 (D.N.J. 1997)  . . . . . . . . . . . . . 22,23

McDonald Douglas Corp. v. Green
    411 U.S. 792, 93 S.Ct. 1817 (1973). . . . . . . . . . . . 30

Meritor Sav. Bank FSB v. Vinson
    477 U.S. 57 (1986)  . . . . . . . . . . . . . . . . . . 23,35

Monell v. New Your City Dept. of Social Services
    436 U.S. 658, 98 S.Ct. 2018 (1978). . . . . . . . . . . . 34

Nappe v. Anschelewitz, et al.
    97 N.J. 37 (1984) . . . . . . . . . . . . . . . . . . . . 46

New Orleans, M. & C.R. Co. v. Hanning
    15 Wall. 649, 21 L.Ed. 220 (1873) . . . . . . . . . . . . 20

Ocasio v. Amtrak
      299 N.J.Super. 139 (App. Div. 1997) . . . . . . . . . . . 54

Oras v. Housing Authority City of Bayonne
      373 N.J.Super. 302 (2004) . . . . . . . . . . . . . . . 45

Ostrowski v. Cape Transit Corp.
      371 N.J.Super. 499 (App. Div. 2004) . . . . . . . . 52,53,54

Pepper v. Princeton Univ. Bd. Trs.
      77 N.J. 55 (1978)   . . . . . . . . . . . . . . . . . . 17

Pryor v. Nat'l Collegiate Athletic Ass.
      288 F.3d 548 (3d Cir. 2002) . . . . . . . . . . . . . . 28

Renda v. King
      347 F.3d 550 (3rd Cir. 2003)  . . . . . . . . . . . . . . 53

Rendine v. Pantzer
      276 N.J.Super. 398 (App. Div. 1994), aff'd as modified
      141 N.J. 292 (1995). . . . . . . . . . . . . . . . . 38,46

Rosenthal and Co. v. Commodity Future Training Comm'n
      802 F.2d 963 (C.A.7th Cir. 1986) . . . . . . . . . . . 20,22

Runyon v. McCray
      427 U.S. 160, 96 S.Ct. 2586 (1976). . . . . . . . . . . .28

Sherman v. Kasotakis
      314 F.Supp.2d 843 (N.D.Iowa 2004) . . . . . . . . . . . 26

Slocumb v. Waffle House
      365 F.Supp.2d 1332 (N.D.Ga. 2005) . . . . . . . . . . . 27

Tarr v. Ciasuli
      181 N.J. 70 (2004)  . . . . . . . . . . . . . . . 38,40,45

Taylor v. Metzer
      152 N.J. 490 (1998)  . . . . . . . . . . . . . . . . 41,44

Thomas v. County of Camden
      386 N.J.Super. 582 (App. Div. 2006). . . . . . . . . . 17,18

Thomas v. Freeway Foods, Inc.
      406 F.Supp.2d 610 (M.D. North Carolina 2005). . . . . . 27

Turner v. Wong
      363 N.J.Super. 186 (App. Div. 2003). . . . . . . 19,27,29,33

United States v. Jones
      763 F.2d 518 (2nd Cir. 1985)  . . . . . . . . . . . . . 53

Williamson v. Waldman
    150 N.J. 232 (1979) . . . . . . . . . . . . . . . . . . . 43

**U.S. CODES**

42 U.S.C. § 1981   . . . . . . . . 2,23,25,27,28,29,32,33,34,45,60

42 U.S.C. § 1981(b) . . . . . . . . . . . . . . . . . . . . 29,33

42 U.S.C. § 1983  . . . . . . . . . . . . . . . . . . . . . 33,34

**FED.R.EVID.**

402 . . . . . . . . . . . . . . . . . . . . . . . 47,49,57,61

403 . . . . . . . . . . . . . . . . . . . . . . . . . . 47,61

404. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

602. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

608  . . . . . . . . . . . . . . . . . . . . . . . . 50,52,57

801(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

803. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

803(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

803(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

803(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

**NEW JERSEY STATUTES**

N.J.S.A. 2A:15-5.9 through 2A:15-5.17. . . . . . . . . . . . 45
    (Punitive Damages Act)

N.J.S.A. 10:5-3 . . . . . . . . . . . . . . . . . . . . 40,45

N.J.S.A. 10:5-4. . . . . . . . . . . . . . . . . . . . . .17,19

N.J.S.A. 10:5-5(1) . . . . . . . . . . . . . . . . . . . . . 27

N.J.S.A. 10:5-12(f)(1) . . . . . . . . . . . 16,17,19,27,32,33,45

**RESTATEMENT**

Restatement (2nd) of Agency § 1. . . . . . . . . . . . . . . .21

Restatement (2nd) of Agency § 217c . . . . . . . . . . . . . 46

Restatement (2nd) of Agency § 219(1) . . . . . . . . . . . . .20

Restatement (2nd) of Agency § 228. . . . . . . . . . . . .22,24

## REFERENCES

J.G. Cook and J.L. Sobieski, Jr., <u>Civil Rights Actions</u>, at pp. 5-14, 5-24, par. 5.03 . . . . . . . . . . . . . . . . . . . 28

3A W. Fletcher, Cyclopedia of the Law of Private Corporations § 1137, pp. 300-301 (rev.ed. 1991-1994). . . . . . . . . . . 20

10 W. Fletcher, Cyclopedia of the Law of Private Corporations § 4877 (rev.ed. 1997-2001) . . . . . . . . . . . . . . . . . . 21

## DEPOSITION CITE CODES:

AA – Deposition transcript of Altoria Avington taken 4/3/06

GR – Deposition transcript of Guy Richardson taken 4/18/06

JK – Deposition transcript of Officer Jason King 4/17/06

TS – Deposition transcript of Officer Tom Savard 4/17/06

DG – Deposition transcript of Donald George 7/17/06

Dr.GR – Deposition transcript of Grigory Rasin, M.D. 1/17/07

HB – Deposition transcript of Hugh F. Butts, M.D. 2/9/07

## POINT V
### PLAINTIFFS' INTENTIONAL INFLICTION
### OF EMOTIONAL DISTRESS CLAIM

Plaintiff Altoria Avington submits the proofs establish a *prima facia* case of intentional infliction of emotional distress. At the outset, it should be noted that Defendant relies on the wrong standard in evaluating a common law claim of intentional infliction of emotional distress in a race based discrimination case. While it is true that the Court held in Buckley v. Trenton Savings Fund Soc'y, 111 N.J. 355, 366-367 (1988), that for conduct to be actionable, "the emotional distress…must be 'so severe that no reasonable [person] could be expected to endure it.'" Buckley was not a discrimination case, rather a bizarre case arising out of an action brought by a bank customer due to the wrongful dishonor of a check.

In Taylor v. Metzger, 152 N.J. 490 (1998)(LAD), the Supreme Court of New Jersey revisited the appropriate standard to apply in a race based discrimination case, Id. at 508 and 521. The fact that plaintiff was diagnosed by a psychiatrist as suffering from post-traumatic stress disorder, "permits a rationale fact finder to conclude that the she suffered severe emotional distress." Id. at 515. Announcing a new standard governing racial discrimination intentional infliction of emotional distress claims, the Court noted that African-Americans may

respond differently than whites, 152 N.J. 517.   The Court
stated:

> When, as here, black plaintiff asserts an intentional
> infliction of emotional distress claim based on the
> harm caused by racial epithets, the inquiry becomes
> whether the average African American would suffer
> severe emotional distress under the circumstances
> ***
> Accordingly, we must decide whether, as a matter of
> law, the average African American could have suffered
> emotional distress as a result of defendant's remark.
> We determine that a rationale fact finder may find
> that defendant's conduct would have caused severe
> emotional distress in the average African American,
> 152 N.J. at 517-518.

Plaintiff Avington submits that based upon the evidence
catalogued in Legal Argument II(B) and VI and Plaintiff's
Statement of Facts, a rationale fact finder could find that the
driver's conduct would have caused sever emotional distress in
the average African American.

Plaintiff also submits that although Christopher Williams
did not receive medical treatment, a rationale fact finder could
find that the driver's conduct also caused Christopher to
experience severe emotional distress.   Due to his age,
Christopher is not able to articulate the full extent of his
distress.   Alternatively, Christopher is entitled to recover for
his emotional distress under LAD (See, Legal Argument VI).

**POINT VI**
**PLAINTIFFS' NEGLIGENT INFLICTION**
**OF EMOTIONAL DISTRESS CLAIM**

Plaintiffs submit that they have established a *prima facia* case of negligent infliction of emotional distress. Plaintiffs agree that a cause of action of negligent infliction of emotional distress involves traditional concepts of duty, breech and causation and that to establish liability for this tort Plaintiff must prove that Defendant's conduct was negligent and proximately caused Plaintiffs' injuries.  Williamson v. Waldman, 150 N.J. 232, 239 (1979)(cataloguing cases).  In order to do so, a plaintiff generally must prove that defendant owed a duty of care to plaintiff, which is analyzed in terms of foreseeability, this is so because recovery for negligent infliction of emotional harm requires that it must be reasonably foreseeable that the tortuous conduct will cause genuine and substantial emotional distress or mental harm to average persons.  Decker v. Princeton Packet Inc., 116 N.J. 418, 430 (1989).  A duty exists when a defendant should have foreseen distress sever enough to cause substantial injury in a person normally constituted, Id. at 429.

It is Plaintiffs' position that when Greyhound, a common carrier, entered into a contractual relationship with Plaintiffs, it owed them a duty not to negligently inflict emotional distress upon them and that it was completely

43

foreseeable that a racially motivated action by its driver could cause genuine and substantial emotional distress or mental harm to the average person and/or in the average African American, See, C.f. Taylor v. Metzger, 152 N.J. 490 (1998).

Initially, it is important to note that when the driver, in a rude, obnoxious and irate fashion, actually asked the Plaintiffs to move without explanation, Altoria was stunned (Exhibit 2, AA58:11-AA59:17, AA60:22-24). As previously indicated, Plaintiff was humiliated, embarrassed and underwent psychiatric treatment and has been diagnosed by two board certified psychiatrists as suffering from chronic post traumatic stress disorder. (Exhibit 16, Initial Psychiatric Evaluation report of Dr. Rasin). She [Altoria] also related how upset and frightened her four year old grandson became such that he was hugging her and crying when the bus driver told her that he wanted her to move to the back of the bus and summoned a policeman. The incident also caused Christopher great upset to

> Since the bus incident, Christopher has developed a fear of police. For example, he has had several episodes, the most recent one occurred approximately two months ago when I was operating a motor vehicle in traffic and would pull up near or next to a bus. On several occasions, while near a bus, Christopher would advise that he recalled when he was on the bus and the police came and scared him and he cried. (Exhibit 19, Certification of Erica Avington).

44

Plaintiff submits that a reasonable jury could return a verdict for Plaintiffs for negligent infliction of emotional distress.

POINT VII

**THE COURT SHOULD NOT DISMISS PLAINTIFFS' PUNITIVE DAMAGE CLAIM**

The claim for punitive damages is based upon N.J.S.A. 10:5-3 (Legislative findings and declarations)("*** and punitive damages) for the public accommodation claim under N.J.S.A. 10:5-12(f)(1), Tarr v. Ciasulli, 181 N.J. 70, 78 (2004), N.J.S.A. 2A:15-5.9 through 2A:15-5.17 (Punitive Damage Act), Clark v. Burger King Corp., 255 F.Supp.2d 334 (N.D.N.J.2003), all noting the availability of punitive damages in a public accommodation case at F.N. 5, Oras v. Housing Authority City of Bayonne, 373 N.J.Super. 302 (2004)(handicapped discrimination).   Punitive damages are also recoverable in an action under 42 U.S.C. § 1981, Johnson v. Railway Exp. Agency, Inc., 421 U.S. 454, 460, 95 S.Ct. 1716, 1720 (1975).   Punitive damages are also recoverable in connection with the Plaintiffs' claim for intentional infliction of emotional distress.   49 Prospect Street Tenant's Assoc. v Sheva Gardens Inc., 227 N.J.Super. 449,482-483 (App. Div. 1988)(recognizing recoverability of punitive damages for intentional infliction of emotional distress but remanding for retrial).

45

There must be an intentional wrong doing in the sense of an "'evil minded act' or an act accompanied by a wanton and willful disregard for the rights of another *** The key to the right of punitive damages is the wrongfulness of the intentional act.'" Nappe v. Anschelewitz, et al., 97 N.J. 37, 49-50 (1984)(quoted with approval in Rendine v. Pantzer, 141 N.J. 292, 314 (1995).

Under the Restatement (2nd) of Agency § 217c, punitive damages are awarded against the principal because of an act by an agent where: (a) the principal authorized the doing and the manner of the act, or (b) the agent was unfit and the principal was reckless in employing him.

As indicated in Legal Argument Point II, II(A) and Plaintiff's Statement of Facts, par. 14, supra, Greyhound placed the driver in control of the bus, permitted him to interact with passengers, expressly authorized the driver to exercise judgment in determining whether a passenger needed to be ejected if a passenger presented a danger to the safety of other passengers, driver or the bus (Exhibit 4) and expressly authorized the driver to deal with/eject passengers (Exhibit 5) and address "unruly passenger behavior" (Exhibit 6). The driver's pretextual justification for his actions was that the child was making noise (Exhibit 3, GR115:18-24; Exhibit 12, TS13:13-21) and it was not until later that the driver acknowledged that the

child never made any noise on the bus (Exhibit 3, GR91:23-GR92:2, GR112:3-11).

A jury could readily determine that in demanding that Plaintiffs move to the back of the bus that Greyhound had authorized the doing and the manner of the act. Additionally, for the reasons indicating in Legal Argument Point V, supra, entries in the driver's personnel file indicated that he had previously been suspended for carrying a deadly weapon, slashing the tires on the Greyhound driver's pick-up truck, grabbed a supervisor by the arm and was described only twenty-five (25) days prior to this incident as a person who had a "real hateful attitude", that he was unfit to drive and interact with members of the public and that Greyhound was reckless in employing him.

## POINT VIII
### RICHARD GRAVES' PERFORMANCE EVALUATIONS OF ALTORIA AVINGTON HAVE NO RELEVANCE TO ANY ISSUE IN THIS CASE AND ADMISSION IS ALSO OUTWEIGHED BY UNDUE PREJUDICE, ISSUE CONFUSION AND MISLEADING THE JURY

Defendant has identified Richard Graves, a principal at Ms. Avington's school who performed a performance evaluation on Mrs. Avington as a security guard as a witness (Final Pretrial Order, p. 45 of 64, par. 12). Plaintiff's objects based upon the absence of any relevance of her school evaluations to any issue in this case. Also present is the potential for undue prejudice, issue confusion and misleading the jury (Final Pretrial Order, p. 46 of 64, Fed.R.Evid. 402, 403).

47

Mr. Graves has not been deposed in this case by any party.

To put the issue in context, Plaintiff who was employed as a security guard for the Irvington Board of Education, has had friction with one of the school principals, Richard Graves, during the time period she was assigned to work at the Florence Avenue Elementary School. Periodically, members of the Irvington public school security department undergo personnel evaluations. Although Plaintiff had positive personnel evaluations in June 1996/1997, June 26, 1996 (by Richard Graves), April 7, 1998, May 10, 2000, June 27, 2001, no apparent evaluation in 2002, February 26, 2003, November 15, 2004 and on January 25, 2006. On March 21, 2005, Richard Graves rendered a perplexing personnel evaluation (Exhibit 20). Although he recommended that Altoria Avington be re-employed with a salary increase, he rated her as unsatisfactory in contact with the public and in compliance with department rules and personal appearance, cooperation, judgment and loyalty. Especially telling regarding his bias is the fact that he rated her uncooperative with himself (the principal) as opposed to being uncooperative with any other supervisor, other school personnel and teachers. He further noted that her interaction with others was troubling, indicating a lack of the ability to accept corrective criticism. Defendant's expert also seeks to use this information in his credibility opinions which Plaintiff objects

48

to.   Interestingly, in a prior review of February 26, 2003 by
the vice-principal, she was rated outstanding in all areas,
especially with her interaction with the principal, and noted
she had tact, courtesy and sensitivity at all times and worked
well with the student population and staff, etc.

As the Court is aware, there is no wage loss claim in this
case.   In order to bash the Plaintiff before the jury, Defendant
seeks  to  venture  into  the  area  of  Plaintiff's  public
employer/employee personnel reviews.   Plaintiff submits that
this area is not relevant, Fed.R.Evid. 402.   In any event, the
admission of this testimony is substantially outweighed by the
danger of unfair prejudice, confusion of the issues, misleading
the jury and undue delay and waste of time.   Admission of this
evidence will result essentially in a trial within a trial.
Plaintiff will be forced to put on proofs to rebut the
observations made by Mr. Graves and the matter will descend into
trial of the merits of Mr. Graves' underlying criticisms which
will unfairly prejudice the Plaintiff, confuse the issues for
the jury's consideration and mislead them in their evaluation of
Plaintiff's credibility and cause undue delay in the trial of
the within matter by waste of time in presentation of proofs on
a completely collateral issues.

No where does Mr. Graves indicate that Mrs. Avington was
not truthful and in fact, he recommended her re-employment with

a salary raise.  To the extent that Defendant might even suggest
that the Graves testimony qualifies as character evidence under
Fed.R.Evid. 404, the admissibility of such testimony in a civil
case is constrained by Rule 608 and this witness is not being
offered as a Rule 608 witness according to the Final Pretrial
Order.

**POINT IX**
**SCOPE OF TESTIMONY OF PLAINTIFFS'**
**WITNESSES: SLATTERY and HOWELL**

In the Final Pretrial Order, Plaintiffs identified
potential witnesses who are Plaintiff Altoria Avington's co-
employees: Julie Slattery (Vice Principal) and Douglas Howell
(teacher), who have knowledge regarding Plaintiff Altoria
Avington's character and reputation for truthfulness and the
legitimacy of her injury claims and to refute allegations that
the Plaintiff Altoria Avington is a malingerer.  In addition,
these witnesses also have knowledge concerning the
industriousness and hard working nature of the Plaintiff Altoria
Avington prior to March 26, 2005 (Final Pretrial Order, p. 44 of
64).  Also, the vice-principal's views on Altoria Avington are
in sharp contrast to those of Mr. Graves.

Defendant has a limited objection to these witnesses
testifying regarding the industrious and hard working nature of
Altoria Avington as an improper attempt to bolster credibility
(Final Pretrial Order, p. 44 of 64).

50

The issue regarding Plaintiff Altoria Avington's character and reputation for truthfulness and the legitimacy of her injury claims and the claim that Plaintiff is a malingerer is one which was injected into this case by the Defendant's psychiatric expert, Ira M. Bergman, M.D., who indicated in his October 30, 2006 report (Exhibit 21, p. 4):

> It is unclear whether seeking mental health care was self-motivated because of emotional suffering or directed by her attorney. In other words, there is a question of malingering or exaggerating reports of suffering because of financial incentive.

Parenthetically, the complete record in this case, belies any contention of attorney referral and Altoria Avington's psychic injury was documented immediately after the incident in a letter to Greyhound, prior to her retention of counsel in connection with this matter (Exhibit 14). In any event, it is the Defendant who has injected this issue into the case and Plaintiff is prepared to introduce proofs, if necessary, on the point. It is unclear if the scope of Defendant's objection relates to Altoria Avington's character and reputation for truthfulness and the legitimacy of her injury claims and to refute allegations that she is a malingerer or whether Defendant's objection is limited to testimony concerning the industrious and hard working nature of the Plaintiff, as there is no lost wage claim. Defendant's objection is to "any attempt and/or accumulative attempts to bolster credibility" Defendant

51

may seek to bar testimony from these witnesses concerning the area of Plaintiff's character and reputation for truthfulness and the legitimacy of her injury claims and to refute allegations that Plaintiff is a malingerer.

In <u>Ostrowski v. Cape Transit Corp.</u>, 371 N.J.Super. 499 (App. Div. 2004), the primary issue on appeal was whether defendant's presentation of expert medical opinion testimony that plaintiff was faking his symptoms of a serious brain injury constituted an attack on his character for truthfulness which plaintiff could rebut with evidence concerning his character for truthfulness. The Court analyzed the question under N.J.R.E. 608, which is substantially similar to the <u>Fed.R.Evid.</u> 608, the Court held:

> [W]e are satisfied that the opinion of defendants' medical experts that plaintiff was faking his symptoms of a serious brain injury was 'opinion evidence' attacking plaintiff's character for truthfulness, which plaintiff was entitled to rebut by opinion and reputation evidence attesting to his character for truthfulness. Id. at 514.

Plaintiffs submit that unless Defendant affirmatively abandons any claim or suggestion of malingering, Plaintiff should be permitted to present evidence of her character for truthfulness during her case in chief, rather than withholding such evidence until rebuttal. Like <u>N.J.R.E.</u> 608, <u>Fed.R.Evid.</u> 608, does not state that the only way a party may attack the character for truthfulness of another party's witness is by the

presentation of evidence in that party's case or that evidence of a witness' truthful character may be presented only in rebuttal. For example, several Federal Courts have recognized that a witnesses character for truthfulness may be raised as an issue in an opening statement thus permitting the other party to present evidence on the issue in its case in chief. See, e.g., Renda v. King, 347 F.3d 550, 555-556 (3rd Cir. 2003), United States v. Jones, 763 F.2d 518,522 (2nd Cir. 1985), cert denied, 474 U.S. 981 (1985). Accord, Ostrowksi, supra., at 514-515.

As in Ostrowski, if Plaintiff is required to withhold the presentation of evidence of her character for truthfulness until rebuttal, she will be forced to recall each one of her treating doctors and lay witnesses who testify in her case in chief. Such a procedure will seriously inconvenience many of those witnesses, multiply expenses, and require the recalling of witnesses and experts who in some instances may be unavailable and Plaintiff will not be able to secure their attendance for a second time. Unless Defendant affirmatively abandons its malingering claim, there is no doubt that Plaintiff's character for truthfulness will be attacked through the testimony of Defendant's psychiatrist, Dr. Ira Bergman.

The next issue pertains to testimony from Plaintiff's lay witnesses involving Plaintiff being industrious and hard working. Defendant claims that there is no issue in this case

regarding that.  While there is no claim in this case for lost earnings, it has been recognized that Plaintiff's industriousness may be relevant in determining the value of her loss of opportunity to enjoy other activities.  See, generally, Ocasio v. Amtrak, 299 N.J.Super. 139 (App. Div. 1997).  As indicated in the Final Pretrial Order, Plaintiff developed a fear of being around people (Final Pretrial Order, p. 18 of 64).  As noted in Dr. Rasin's initial psychiatric evaluation (Exhibit 16): "she also relates that since this accident she has become isolative and only feels comfortable going from home to work and back."  This is confirmed in the December 13, 2006 psychiatric report of Dr. Butts (Exhibit 17, p. 3) indicating that Mrs. Avington developed a "…fear of being around a lot of people, and avoidance of people."  Mrs. Avington confirmed that she curtailed her customary activities, such a socializing, interacting with people and frequenting malls (HB113:15-HB114:12)(April 3, 2006).  Therefore, evidence of this type is admissible, Ostrowski, supra., at 516.

### POINT X
### THE COURT WILL NEED TO LIMIT THE
### SCOPE OF JOSEPH KAYLOR'S TESTIMONY

As indicated in the Addendum to the Final Pretrial Order (p. 57 of 64), Defendant wishes to adduce testimony from Joseph Kaylor who is the city manager with Greyhound in Missouri.  Mr. Kaylor is represented to be one of Mr. Richardson's supervisors

and his duties are alluded to include driver operations and customer service. Defendant claims that he was involved with the investigation of this incident and has knowledge with respect to Mr. Richardson's work history and may also rebut testimony from Plaintiffs or their witnesses.

The only item which Defendant supplied in discovery pertaining to Joseph Kaylor was a memorandum dated May 17, 2005 (Exhibit 22). As indicated in the Final Pretrial Order (pp. 44-45 of 64), Joseph Kaylor signed the verification for Defendant's response to Plaintiffs' request for production of documents and answers to interrogatories on information and belief and has no personal knowledge concerning the event, which transpired on March 26, 2005.

On May 17, 2005 Joseph Kaylor had a discussion with the Defendant bus driver, Guy Richardson, approximately two months post incident, the driver made self-serving statements which are inadmissible and also additional statements involving an unrelated incident that Guy Richardson was wearing a rubber glove and he was reprimanded.

It is unknown at this time if Defendant intends to call the driver, Guy Richardson, as a witness. Mr. Richardson is not a party Defendant in this case.

On April 18, 2006 Guy Richardson was deposed by Plaintiff. According to Mr. Richardson, he spoke with Mr. Kaylor regarding

Altoria Avington in the presence of Ralph Kendall, who is Mr. Richardson's union representative (Exhibit 3, GR45:18-GR46, GR47:18). It is axiomatic that Defendant's union representative seeks to advance Mr. Richardson's interests visa via Greyhound pertaining to matters of pay, discipline, etc. As indicated, there is an attenuation of approximately two months between the March 26, 2005 incident and the Richardson statement to Kaylor on May 17, 2005, thereby dissipating any guarantee of trustworthiness of a statement which is less probative on the point than Richardson's own testimony as to what occurred. Accordingly, the Court should not admit that portion of the Kaylor testimony that refers to Richardson's two month post incident self-serving statements to Kaylor.   Mr. Kaylor was not on the Greyhound bus nor did he respond to the scene and has no personal knowledge of what transpired, Fed.R.Evid. 602 (lack of personal knowledge).   The area of driver operations and customer service have been addressed by Greyhound Vice President Myron Watkins, who was deposed on Wednesday, January 30, 2008.

It is not known exactly what Defendant means in indicating that Joseph Kaylor has knowledge with respect to Richardson's work history.   If Kaylor intends to give testimony akin to character testimony for Richardson (which is belied by entries in Richardson's personnel file) it is not admissible because it is only evidence of his character for truthfulness or

untruthfulness that even has arguable relevance under Fed.R.Evid. 608.

**POINT XI**
**GLENITRA JOHNSON'S TESTIMONY IS RELEVANT**
**AND ADMISSIBLE UNDER Fed.R.Evid. 402**

In the Final Pretrial Order, Plaintiff identified Glenitra Johnson, Plaintiff's daughter, who resides in Tulsa, Oklahoma, as a witness (p. 42 of 64). Glenitra picked Plaintiffs up at the bus station in Tulsa, Oklahoma and observed Altoria to be visibly shaken and upset when she related to her daughter the story of the Greyhound driver's conduct towards her and Christopher Williams on board the bus. Defendant has objected to any testimony of Glenitra Johnson beyond what she observed (Final Pretrial Order, p. 44 of 64). Glenitra's observations of Plaintiff alone, without explanation and context, will be of little value to a jury that will need to evaluate damages. The incident occurred on March 26, 2005 and on March 28, 2005 Plaintiff authored a letter to Greyhound documenting the incident and identifying the impact it had on her (Exhibit 14).

Testimony concerning Plaintiff's advisement to her daughter as to what occurred on the bus and Glenitra's contemporaneous observation of the fact that Plaintiff was visibly shaken and upset while recounting the event is admissible. Statements made by a party plaintiff are not hearsay where the plaintiff will testify at trial and is subject to cross-examination concerning

57

the statement and under Fed.R.Evid. 801(b), is consistent with the declarant's testimony is offered to rebut an express or implied charge of recent fabrication, improper influence or motive.   To begin with, since the bus driver and Plaintiff's versions of the incident differ, there is no question that the Defendant will seek to attack Plaintiff's credibility by alleging that she has fabricated portions of her testimony. This is especially true whether or not malingering is an issue and to the extent that malingering is an issue in this case that consideration is also implicated.   The temporal relationship between Glenitra Johnson's observation of Plaintiff as being visibly upset and the Plaintiff's recounting of the incident is highly relevant to and consistent with Plaintiff's psychiatric injury claims.

Plaintiff submits that the testimony also qualifies as a present sense impression, Fed.R.Evid. 803(1), excited utterance under Fed.R.Evid. 803(2), and a statement of declarant's then existing state of mind, emotion, sensation or physical condition, Fed.R.Evid. 803(3).   As indicated in Fed.R.Evid. 803, where the declarant (Plaintiff) is available as a witness, 803 qualifying statements are not excluded by the hearsay rule.

## POINT XII
### ISSUES REGARDING GREYHOUND'S GENERAL MANAGER BILL BLANKENSHIP ARE MOOT

The addendum to the Final Pretrial Order sets forth Plaintiffs' objections to the testimony of Bill Blankenship (page fifty-six (56) of sixty-four (64), Addendum to Final Pretrial Order). Any issues regarding Bill Blankenship are moot as Defendant has withdrawn Mr. Blankenship as a witness in this case and in lieu indicated it will rely upon the testimony of Myron Watkins, who is presently Greyhound's Vice President of Operations and who was deposed on Wednesday, January 30, 2008 pursuant to the Letter Order of Magistrate Bongiovanni dated January 17, 2008.

## POINT XIII
### ISSUES REGARDING ALEX GUARIENTO ARE MOOT

The Final Pretrial Order, page forty-six (46) of sixty-four (64), indicates objections regarding Alex Guariento, Senior Director of Safety and Security at Greyhound, would be decided at trial. Plaintiffs' objections are set forth with specificity in the Addendum to the Final Pretrial Order on page fifty-eight (58) of sixty-four (64). At the January 30, 2008 deposition of Myron Watkins, Greyhound's present Vice President of Operations, Defendant placed a stipulation on the record that it would not be calling Alex Guariento at the time of trial due to an overlap

in the testimony between Mr. Guariento and Myron Watkins. Accordingly, an issues regarding Alex Guariento are moot.

## POINT XIV
### THE SCOPE OF MYRON WATKINS' TESTIMONY

It appears that Myron Watkins has been substituted for Alex Guariento to also address issues of safety and security. As indicated on page 46 of 64 in the Final Pretrial Order and on page 58 of 64, Plaintiff objects to any testimony concerning the historical genesis regarding Greyhound's policies and procedures dealing with potentially violent individuals. This is especially true regarding the driver manual policy #34, revised August 2005, which was not even in effect on the date of this incident (Addendum, Final Pretrial Order, p. 56 of 64).

Defense counsel has already indicated that he wishes to put the 9/11 fear into everyone as a justification for negating Plaintiff's Civil Rights under 42 U.S.C. 1981. First, the historical genesis of whatever safety and security policies Greyhound had in effect on the date of this incident are irrelevant. Whatever the policies and procedures were on March 26, 2005, there is no relevance or need to have Myron Watkins go into a historical analysis of the policy which can only serve to divert the jury's attention from the central issue in the case, did Greyhound discriminate against the Plaintiffs because of their race?

Plaintiff presumes that in addition to discussing the historical genesis of Greyhound's safety policies and procedures, Defendant will also attempt to put before the jury specific occurrences onboard Greyhound buses which have threatened the safety or security of its bus drivers and/or passengers.  The testimony has absolutely no relevance to any of the issues in this case.  Fed.R.Evid. 402.  Any probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury and undue delay and should be excluded.  Fed.R.Evid. 403.

Respectfully submitted,

TOBIN REITMAN GREENSTEIN
CARUSO WIENER & KONRAY, P.C.

By:  /s/ Steven J. Greenstein
     STEVEN J. GREENSTEIN

DATED: March 25, 2008